DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of felonious assault and one count of attempted murder and sentenced him to a term of imprisonment. Both counts had firearm and repeat violent offender specifications attached. For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "I. The trial court erred by instructing the jury that they could consider flight from the scene in determining the guilt of defendant.
 {¶ 4} "II. The trial court erred in finding that defendant was a repeat violent offender.
 {¶ 5} "III. The trial court erred by violating the double jeopardy clause of the State of Ohio and United States Constitutions by allowing the jury to consider felonious assault after they returned with a verdict on the attempted murder charge.
 {¶ 6} "IV. The trial court erred by violating the double jeopardy clause of the State of Ohio and United States Constitutions by entering a sentence for felonious assault after defendant's sentencing hearing had been held and the court had already journalized its sentencing order.
 {¶ 7} "V. The trial court erred by imposing the maximum sentence."
 {¶ 8} The undisputed facts that are relevant to the issues raised on appeal are as follows. On January 9, 2003, appellant was charged in a two-count indictment with one count of felonious assault in violation of R.C. 2903.11, with a firearm specification and a repeat violent offender specification; and one count of attempted murder in violation of R.C.2923.02, with a firearm specification and a repeat violent offender specification.
 {¶ 9} The charges arose out of a shooting that occurred on the night of November 14, 2002, in Toledo, Ohio. The incident occurred at the home of appellant's girlfriend, Sheronda Daugherty, following an argument between appellant and the victim, Anthony King. According to testimony at trial, at one point during the dispute, appellant left the room and returned with a shotgun. Appellant shot King in the back as King walked out of the house. Appellant then came out of the house, said something to King as he lay on the ground, walked toward the basement of the house and left the scene. Police apprehended appellant a short time later riding in his father's truck.
 {¶ 10} The matter proceeded to trial and on April 30, 2003, the jury returned a verdict of guilty as to attempted murder and the firearm specification but did not return a verdict as to the felonious assault count. Over appellant's objection, the trial court ordered the jury to deliberate further and return a verdict as to Count 1. The jury then returned a verdict of guilty as to the felonious assault count and the firearm specification. On May 6, 2003, the trial court held a hearing to determine whether appellant was a repeat violent offender pursuant to R.C. 2941.149. The trial court found appellant to be a repeat violent offender following the testimony of appellant's probation officer that he had previously been charged with and convicted of felonious assault after shooting someone in the chest. On May 21, 2003, the matter was called for a sentencing hearing and appellant was sentenced to serve ten years imprisonment for the attempted murder conviction, three years for the firearm specification and an additional two years based on the finding that he was repeat violent offender. The trial court ordered that all of the sentences be served consecutively. At that time, the trial court did not impose a sentence for the felonious assault conviction and the firearm specification attached to that charge.
 {¶ 11} Appellant began to serve his sentence, and on June 17, 2003, the case was called for a sentence review hearing. At that time, the trial court ordered the original sentence modified. The trial court sentenced appellant to ten years for the attempted murder conviction and eight years for the felonious assault conviction. In addition, appellant was sentenced to serve three years for each firearm specification, four years for the repeat violent offender finding as to the felonious assault conviction, and two years for the repeat violent offender finding as to the attempted murder conviction. The trial court then ordered the two fifteen-year sentences to be served concurrently with the exception of the three-year firearm specification from Count 1, which was to be served consecutively, for a total sentence on all charges of eighteen years.
 {¶ 12} In his first assignment of error, appellant asserts that the trial court erred by instructing the jury that it could consider flight from the scene when determining appellant's guilt. As part of its instructions to the jury, the trial court stated as follows, over appellant's objection:
 {¶ 13} "Now in this case the prosecution argues that there is evidence that the defendant fled or attempted to flee from the vicinity of the crime. Flight in and of itself does not establish guilt, but it may tend to show consciousness of guilt or some guilty connection to the crime. If you find that the defendant did flee or attempted to flee from the scene of the alleged crime, then you may consider this flight as a circumstance in determining the guilt or innocence of the defendant."
 {¶ 14} It is well established that flight is admissible as evidence that tends to show consciousness of guilt. Sibron v. New York (1968),392 U.S. 40, 66. Further, a jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge. SeeUnited States v. Dillon (C.A.6, 1989), 870 F.2d 1125. A decision as to whether to issue a flight instruction rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. State v. Sims (1984), 13 Ohio App.3d 287, 289. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 15} Flight from justice "means some escape or affirmative attempt to avoid apprehension." State v. Wesley, Cuyahoga App. No. 80684, 2002 Ohio 4429, citing United States v. Felix-Gutierrez (C.A.9, 1991),940 F.2d 1200, 1207. Here, there was ample evidence presented at trial to support the trial court's decision to give the jury an instruction on flight.
 {¶ 16} At trial, a neighbor testified that she was awakened during the night of November 14, 2002, by a loud noise. She then heard someone say, "Let me in the truck," and when she looked out her window she saw two men, one wearing a white t-shirt, running away from the scene of the shooting. Appellant's girlfriend testified that after the shooting she saw appellant, who was wearing a white t-shirt, walk toward the basement and then leave the scene. Further, Detective Sherri Wise testified that appellant's girlfriend told her that when she said she was going to call the police appellant left the house and ran down the alley. Officer Patrick Sutherland testified that while he was on the scene of the shooting he received a call from Detective Wise, who thought the suspect from the shooting was in a truck she was following. Sutherland responded to the call, stopped the truck and arrested appellant, who was a passenger in the vehicle.
 {¶ 17} Upon thorough review of the testimony, we find that sufficient evidence existed to support the flight instruction. There is no support in Ohio law for appellant's contention that an individual must run away or leave the scene rapidly in order for his actions to constitute "flight." As set forth above, flight has been held to mean "some escape or affirmative attempt to avoid apprehension." Wesley, supra. It is clear from the testimony that appellant fled from the scene of the shooting before the police arrived in order to avoid apprehension. Accordingly, the trial court did not abuse its discretion by instructing the jury on flight and appellant's first assignment of error is not well-taken.
 {¶ 18} In his second assignment of error, appellant asserts that the trial court erred by finding him to be a repeat violent offender. Appellant argues that the state did not present sufficient evidence to meet the statutory definition of repeat violent offender, which appellant claims requires the state to show that appellant had caused or attempted to cause serious physical harm to the victim in a prior case. This is an incorrect statement of the law.
 {¶ 19} Pursuant to R.C. 2929.01(DD), "[re]peat violent offender" means a person about whom both of the following apply:
 {¶ 20} "(1) The person has been convicted of or has pleaded guilty to, and is being sentenced for committing, for complicity in committing, or for an attempt to commit, * * * murder * * * that involved an attempt to cause serious physical harm to a person * * * or a felony of thesecond degree that * * * resulted in serious physical harm to a person.
 {¶ 21} "(2) Either of the following applies:
 {¶ 22} "(a) The person previously was convicted of or pleaded guilty to, and previously served or, at the time of the offense was serving, a prison term for, any of the following:
 {¶ 23} "(i) Aggravated murder, murder, involuntary manslaughter, rape, felonious sexual penetration * * *, a felony of the first or seconddegree that resulted in the death of a person or in physical harm to aperson, or complicity in or an attempt to commit any of those offenses; * * *." [Emphasis added.]
 {¶ 24} Appellant meets the first criteria based on being convicted of attempted murder, as well as felonious assault, a felony of the second degree, in this case. Appellant also meets the second criteria based on his prior conviction of felonious assault. Appellant argues that there was no evidence that he caused "serious physical harm" to the victim in the prior case. However, R.C. 2929.01(DD)(2)(a)(i) requires only that the defendant caused "physical harm to a person," not "serious physical harm." We first note that the fact that appellant was previously convicted of felonious assault establishes physical harm, as R.C.2929.11(A)(1) defines that offense as "knowingly caus[ing] serious physical harm to another * * *." Further, at the repeat violent offender hearing, the state presented the testimony of appellant's probation officer, who stated that the previous felonious assault conviction arose from an incident wherein appellant shot the victim in the chest with a handgun. Based on our review of the record, we find that there was sufficient evidence presented at the repeat violent offender hearing to establish that appellant was previously convicted of a second-degree felony that resulted in physical harm to a person. Accordingly, we find that the trial court did not err by finding that appellant is a repeat violent offender and appellant's second assignment of error is not well-taken.
 {¶ 25} In his third assignment of error, appellant asserts that attempted murder and felonious assault are allied offenses of similar import and that the trial court violated his constitutional rights against double jeopardy and his statutory rights under R.C. 2941.25 when it sentenced him on both convictions.
 {¶ 26} Pursuant to R.C. 2941.25, a two-part test must be undertaken to determine whether two crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is examined to determine whether he can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was separate animus for each crime, the defendant may be convicted of both offenses. See State v. Rance (1999), 85 Ohio St.3d 632; State v.Bostick, 8th Dist. No. 82933, 2004-Ohio-1902.
 {¶ 27} In this case, a comparison of the offenses at issue, attempted murder and felonious assault, reveals that they are not offenses of similar import because each offense requires proof of at least one element that the other does not. Attempted murder is committed by purposely engaging in conduct that, if successful, would constitute or result in the purposeful death of another person. R.C. 2903.02(A) and R.C. 2923.02(A). Appellant was also indicted under R.C. 2903.(A)(2), which defines felonious assault as knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance. An abstract comparison of the elements of each offense reveals that they differ in at least three respects. First, attempted murder requires that the offender act "purposely," whereas felonious assault requires only that the offender act "knowingly." While proof of purpose is sufficient to prove knowledge, proof of knowledge is not sufficient to prove purpose. R.C. 2901.22(E). Therefore, an act of felonious assault will not necessarily result in the commission of attempted murder because the culpable mental state required for attempted murder is higher that that required for felonious assault.
 {¶ 28} Next, attempted murder requires that the offender attempt to cause the death of another person, an element not required to prove felonious assault. Therefore, a person could commit felonious assault without intending to cause the victim's death, precluding a finding of attempted murder. Finally, felonious assault under R.C. 2903.11(A)(2) requires proof of physical harm, which the offense of attempted murder does not, as well as the use of a deadly weapon or dangerous ordnance, which is also not required for the commission of attempted murder. Thus, an act of attempted murder will not always result in an act of felonious assault.
 {¶ 29} Upon examining the separate elements of each of those offenses, it is clear that a person may commit felonious assault without also satisfying the elements of attempted murder and also that a person may commit attempted murder without satisfying the elements of felonious assault. Thus, felonious assault and attempted murder are not allied offenses of similar import. Based on this finding, an analysis of whether the appellant committed the crimes with separate animus is unnecessary.
 {¶ 30} Accordingly, a defendant may be convicted of both offenses, and a separate sentence for each offense does not violate R.C. 2941.25 or the constitutional protections against double jeopardy. Appellant's third assignment of error is not well-taken.
 {¶ 31} In his fourth assignment of error, appellant asserts that the trial court erred by entering a sentence for felonious assault after his May 21, 2003 sentencing hearing and after the court had already journalized its sentencing order. Appellant argues that when a defendant has already begun to serve his sentence, as he had in this case, the trial court lacks the authority to increase the sentence and further asserts that resentencing a defendant violates his right to finality of sentence.
 {¶ 32} On May 21, 2003, the trial court sentenced appellant for the attempted murder conviction. The sentence is set forth on the docket sheet but there is no indication in the record that it was ever journalized. No sentence was imposed for the felonious assault conviction at that time. On June 4, 2003, the matter was called for a sentence review hearing, which was held on June 17, 2003. The trial court did not increase appellant's attempted murder sentence at the second hearing but did impose sentence for the conviction of felonious assault, ordering appellant to serve eight years for felonious assault, three years for the firearm specification and four years based on the finding that appellant is a repeat violent offender. The record reveals that the judgment entry of sentence for both convictions was journalized June 20, 2003.
 {¶ 33} While appellant had begun serving his attempted murder sentence by the time the sentence review hearing was held on June 17, 2003, that sentence was not increased at the hearing or modified in any way. At the hearing, the trial court imposed sentence for the felonious assault conviction, which it had not yet done. As indicated by the record, neither sentence was journalized until June 20, 2003. Because a court speaks through its journal, State v. Ellington (1987), 36 Ohio App.3d 76, a sentence does not become final until it has been entered on the journal. See State v. Harris (1981), 2 Ohio App.3d 48. Therefore, neither sentence was final until the June 17, 2003 order was journalized and, accordingly, the trial court did not err by imposing the sentence for felonious assault at that time. Appellant's fourth assignment of error is not well-taken.
 {¶ 34} In his fifth assignment of error, appellant asserts that the trial court erred by imposing the maximum sentence for his two convictions. Appellant again argues that, based on the evidence adduced at his hearing, the trial court erred by finding that he was a repeat violent offender and in subsequently considering that factor in sentencing. Pursuant to our finding as to appellant's second assignment of error on this issue, however, this argument is without merit. Appellant further argues that the trial court failed to consider all of the applicable factors as required by statute when deciding to impose maximum sentences for each conviction and, more specifically, erred by finding that he had committed the worst form of the offense.
 {¶ 35} The provisions of R.C. 2929.14 direct when a maximum prison term may be imposed:
 {¶ 36} "(C) The court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 37} Additionally, R.C. 2929.19(B)(2)(d) requires the trial court to give its reasons for imposing a maximum prison term for a sentence for one offense or for two or more offenses arising out of a single incident. Thus, the trial court must determine that the offender "fits into one of the categories listed in R.C. 2929.14(C)" and make the necessary "finding that gives its reasons" for imposing the maximum sentence or sentences. State v. Edmonson (1999), 86 Ohio St. 3d 324, 329. Further, the Supreme Court of Ohio has held that R.C. 2929.14(E)(4) and2929.19(B)(2)(c) require a trial court to make its statutorily enumerated findings regarding consecutive and maximum sentences, and state its reasons for those findings, at the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165.
 {¶ 38} This court has thoroughly read the transcripts of the May 6, 2003 repeat violent offender hearing and both of appellant's sentencing hearings. We note that at the hearing held on May 6, 2003, the trial court found appellant to be a repeat violent offender as defined in R.C.2929.01(DD), a determination which in an of itself allows the trial court to impose a maximum sentence upon an offender. R.C. 2929.14(C). Further, as to both convictions, the trial court found that appellant had committed the worst form of the offense and posed the greatest likelihood of recidivism. In support, the trial court found that appellant shot the victim in the back at close range with a shotgun, that the victim suffered a permanent disability, and that appellant's relationship with the victim facilitated the offense. In support of its conclusion as to the likelihood of recidivism, the trial court found that that the offense occurred while appellant was on community control, that appellant had a history of criminal convictions, that he had not responded favorably to sanctions previously imposed, and that he showed no genuine remorse.
 {¶ 39} For all of the foregoing reasons, this court finds that the trial court did not err in imposing maximum sentences for appellant's convictions and, accordingly, appellant's fifth assignment of error is not well-taken.
 {¶ 40} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Glasser, J. and Pietrykowski, J. concur.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.